19-4349
*Pennington v. D'Ippolito*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

*Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.*

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 5th day of April, two thousand twenty-one.

PRESENT:   ROBERT D. SACK,
           RICHARD C. WESLEY,
           STEVEN J. MENASHI,
                *Circuit Judges.*

_____

DALE PENNINGTON,

     *Plaintiff-Appellant,*

  v.                                                          No. 19-4349

PIERO D'IPPOLITO and CICINELLI & D'IPPOLITO, CPA's, P.C.,

     *Defendants-Appellees.*

_____

*For Plaintiff-Appellant*: PATRICK J. MCHUGH, MHR Lewis (US) LLC, Stamford, Connecticut (Patrick A. Klingman, Klingman Law, LLC, Hartford, Connecticut, *on the brief*).

*For Defendants-Appellees*: JAMES F. CREIGHTON, Dorf & Nelson LLP, White Plains, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (Seibel, J.).

Upon due consideration, it is hereby **ORDERED**, **ADJUDGED**, and **DECREED** that the judgment of the district court is **AFFIRMED.**

Dale Pennington appeals the district court's decision entering summary judgment in favor of Piero D'Ippolito and Cicinelli & D'Ippolito, CPA's, P.C., on Pennington's claims for professional negligence, aiding and abetting common-law fraud, and aiding and abetting a violation of Connecticut's Unfair Trade Practices Act (CUTPA).[1] We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal.

---

[1] The district court also entered summary judgment for D'Ippolito on other claims, but Pennington appeals its judgment only with respect to these claims.

2

# BACKGROUND

Pennington owned a 25 percent share in Sisemen, LLC. Sisemen's only asset was a piece of commercial rental property in Norwalk, Connecticut. Unbeknownst to Pennington, his business partner—Kurt Wittek, who owned a 75 percent share in Sisemen—caused Sisemen to take out a $9.4 million loan from 365 Cherry, LLC in 2007 and to pledge Sisemen's property as security. Each installment of the loan passed to Wittek after flowing through Sisemen's bank account. Sisemen defaulted on the loan, and 365 Cherry foreclosed on Sisemen's property in 2011. This left Sisemen devoid of assets and Pennington's interest in it valueless.[2]

During this time, D'Ippolito served as Sisemen's accountant and knew that funds were flowing from 365 Cherry to Wittek through Sisemen's account. D'Ippolito, however, did not account for these transactions on Sisemen's financial records. He also did not inform Pennington of these transfers.

Based on these events, Pennington sued D'Ippolito, bringing claims of (1) professional negligence; (2) negligence; (3) breach of fiduciary duties;

---

[2] Pennington brought an arbitration action against Wittek in 2015. The arbitrator ruled in Pennington's favor and awarded him $1.1 million. Pennington has failed in his attempts to collect this award from Wittek.

(4) aiding and abetting breach of fiduciary duties; (5) fraud; (6) aiding and abetting fraud; (7) unfair trade practices under CUTPA; (8) aiding and abetting unfair trade practices under CUTPA; and (9) deceptive acts and practices under New York General Obligation Law.

D'Ippolito moved for summary judgment on all counts. The district court granted D'Ippolito's motion in full. *Pennington v. D'Ippolito*, 425 F. Supp. 3d 222 (S.D.N.Y. 2019). Pennington timely appealed.

## DISCUSSION

We review a district court's decision to grant summary judgement *de novo*, viewing the record in the light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor. *Samuels v. Mockry*, 77 F.3d 34, 35 (2d Cir. 1996).

### I

Though the movant bears a heavy burden on a summary judgment motion, the non-movant is not always without a burden. Once the movant has "demonstrat[ed] the absence of a genuine issue of material fact … the onus shifts to the party resisting summary judgment to present evidence sufficient to satisfy every element of the claim. The non-moving party is required to 'go beyond the

pleadings' and 'designate specific facts showing that there is a genuine issue for trial.'" *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The rule setting out the procedure for summary judgment practice specifies that "[a] party … must support [its] assertion" that "a fact cannot be or is genuinely disputed … by citing to particular parts of materials in the record … or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact … the court may … consider the fact undisputed for purposes of the motion [and] grant summary judgment if the motion and supporting materials— including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Additionally, in ruling on a summary judgment motion "[t]he court need consider only the cited materials" in the parties' submissions. Fed. R. Civ. P. 56(c)(3).

D'Ippolito argued before the district court that he was entitled to summary judgment on the professional negligence claim because Pennington did not show that D'Ippolito's alleged accounting malpractice caused any injuries. Specifically,

D'Ippolito contended that the alleged malpractice occurred after Wittek took out the loan and Pennington did not explain how he could have prevented the damage caused by Wittek's actions even if D'Ippolito had alerted Pennington to the existence of the loan directly or by noting it in Sisemen's financial records. D'Ippolito also cited a decision from our court indicating that in a scenario such as this one, a plaintiff cannot demonstrate that the alleged negligence proximately cased its injuries. *See Paladini v. Capossela, Cohen, LLC*, 515 F. App'x 63, 65 (2d Cir. 2013) (affirming a district court's decision to dismiss an accounting malpractice claim because the alleged "wrongful acts … occurred after [the] companies undertook the loans and made the distributions" that directly caused the plaintiff's injuries). D'Ippolito thus satisfied his burden to make out a *prima facie* case for summary judgment.

The burden then shifted to Pennington to "support [his] assertion" that the issue of D'Ippolito's causation of his injuries was "genuinely disputed … by citing to particular parts of materials in the record … or showing that the materials [D'Ippolito] cited d[id] not establish the absence … of a genuine dispute" regarding causation. Fed. R. Civ. P. 56(c)(1); *see also Nat'l Wrecking Co. v. Spangler, Jennings, Spangler & Dougherty*, 782 F.2d 101, 104 (7th Cir. 1986) ("[T]o withstand a

6

motion for summary judgment, the party opposing the motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered.") (internal quotation marks omitted). Pennington did not meet that burden. He addressed the causation issue only by stating, without citation or explanation, that "there is ample evidence in the record to demonstrate Mr. Pennington suffered monetary harm proximately caused by the calculated acts and omissions (active concealment) of Mr. D'Ippolito." Memorandum in Opposition to Motion for Summary Judgment at 15, *Pennington*, 425 F. Supp. 3d 222 (No. 18-CV-5799), ECF No. 44. These conclusory averments are insufficient to place a matter in genuine dispute, and the district court was therefore entitled to "consider the fact undisputed for the purposes of the motion." Fed. R. Civ. P. 56(e).

While the district court nevertheless "dug into the record" to find evidence that would demonstrate a genuine dispute on the causation issue, it did not succeed in making Pennington's argument for him. *Pennington*, 425 F. Supp. 3d at 230-31. Pennington's loss at summary judgment, therefore, may be attributed to his failure to "connect [D'Ippolito's] actions to any specific damages" or to "suggest[] how he would have been able to rescue his investment" in Sisemen absent D'Ippolito's alleged malpractice. *Id.*

7

Pennington stresses that proximate cause is ordinarily a jury question and that it is a proper basis for summary judgment only in certain circumstances. *See Benitez v. N.Y.C. Bd. of Educ.*, 73 N.Y.2d 650, 659, 541 N.E.2d 29, 34 (1989) ("[I]issues of proximate cause are generally fact matters to be resolved by a jury."). That may be true, but D'Ippolito's motion for summary judgment made out a sufficient case for summary judgment, and it was therefore Pennington's responsibility to rebut it. Because he did not, the district court was free to enter summary judgment for D'Ippolito on this claim. *See Paladini*, 515 F. App'x at 65 ("[A] district court can dismiss an action based on proximate cause at the pleading stage.").

On appeal, Pennington presents a detailed argument explaining how D'Ippolito's alleged accounting malpractice caused him to suffer monetary harm. This argument, however, comes too late. Pennington failed adequately to oppose summary judgement on his professional negligence claim before the district court, and the district court properly entered judgment on that claim in D'Ippolito's favor. We therefore affirm that decision.

**II**

After the district court dismissed Pennington's common-law fraud claim as duplicative of his professional negligence claim, it further dismissed his aiding

8

and abetting fraud claim because "aiding and abetting claims 'require the existence of a primary violation.'" *Pennington*, 425 F. Supp. 3d at 231-32 (quoting *Weshnak v. Bank of Am., N.A.*, 451 F. App'x 61, 62 (2d Cir. 2012)). This reasoning was erroneous. Pennington alleged a primary fraud other than D'Ippolito's alleged accounting malpractice—namely, Wittek's scheme to take out the loan and enrich himself at Sisemen's and Pennington's expense. When viewed in this light, Pennington's aiding and abetting fraud claim was not necessarily duplicative of his professional negligence claim.[3] Nevertheless, "[w]e may … affirm the judgment of the district court on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely." *Pollara v. Seymour*, 344 F.3d 265, 268 (2d Cir. 2003). We do so here.

"To establish liability for aiding and abetting fraud [under New York law[4]], [a] plaintiff[] must show (1) the existence of a fraud; (2) the defendant's knowledge

---

[3] *See White of Lake George Inc. v. Bell*, 251 A.D.2d 777, 778 (N.Y. App. Div. 3d Dep't 1998) (holding that fraud claims duplicate professional negligence claims when the plaintiff alleges only that a professional endeavored to "conceal[] or fail[ed] to disclose [his] own malpractice" but that "a fraud claim [that] is asserted in connection with charges of professional malpractice … is sustainable … [if] it is premised upon one or more affirmative, intentional misrepresentations").

[4] Because D'Ippolito was licensed in New York and based his business there, the case below proceeded under the assumption, unchallenged by either party, that New York

of the fraud; and (3) that the defendant provided substantial assistance to advance the fraud's commission." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 292 (2d Cir. 2006) (internal quotation marks and alteration omitted). To satisfy the knowledge prong, a plaintiff must demonstrate that the defendant had actual knowledge of the underlying fraud. *Oster v. Kirschner*, 77 A.D.3d 51, 55 (N.Y. App. Div. 1st Dep't 2010). Constructive knowledge does not suffice.

D'Ippolito, here and before the district court, argues that Pennington cannot plausibly demonstrate that he had actual knowledge of Wittek's alleged fraud. We agree. The record lacks evidence that either ties D'Ippolito to Wittek's decision to take out the loan or directly shows that D'Ippolito knew that the money passing through Sisemen's account from 365 Cherry to Wittek was encumbering Sisemen without Pennington's knowledge. Pennington responds that a jury could reasonably conclude that D'Ippolito actually knew of Wittek's scheme and knowingly rendered him substantial assistance based on D'Ippolito's knowledge that funds were flowing through Sisemen's account from 365 Cherry to Wittek and D'Ippolito's failure to report those transactions on Sisemen's financial records.

---

law applies to Pennington's common law claims. *See Pennington*, 425 F. Supp. 3d at 228 n.5.

10

"[A] party," however, may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986); *see also Wieland v. C. A. Swanson & Sons*, 223 F.2d 26, 27 (2d Cir. 1955) ("The party who bears the burden of proof is not entitled to submit alternative possibilities to a jury for speculative choice among them when the record supplies no evidentiary basis for choice by logical inference") (applying New Jersey law). Pennington's theory of D'Ippolito's knowledge is too speculative to make out a genuine dispute on this issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("[A] plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); *see also Victory v. Pataki*, 814 F.3d 47, 68-69 (2d Cir. 2016). Therefore, we affirm the district court's decision to grant D'Ippolito summary judgment on Pennington's claim for aiding and abetting fraud.

## III

The court also dismissed Pennington's aiding and abetting CUTPA claim based on flawed reasoning. It merely analyzed whether D'Ippolito's conduct violated CUTPA, concluded that his conduct did not, and dismissed both of Pennington's "CUTPA claims." *Pennington*, 425 F. Supp. 3d at 232-33. Pennington,

11

however, alleged that D'Ippolito aided and abetted *Wittek*'s conduct with respect to the loan, which itself allegedly violated CUTPA.[5]

Again, however, "[w]e may … affirm the judgment of the district court on any basis for which there is a record sufficient to permit conclusions of law, including grounds upon which the district court did not rely." *Pollara*, 344 F.3d at 268. For the same reasons discussed above with respect to Pennington's aiding and abetting fraud claim, the record cannot support a claim against D'Ippolito for aiding and abetting Wittek's scheme.[6] Therefore, we affirm the district court's decision to grant D'Ippolito summary judgment on Pennington's claim for aiding and abetting a CUTPA violation.

---

[5] The district court also erred in holding that, to maintain a CUTPA action, a plaintiff's claim "must demonstrate some nexus with the public interest and not involve a purely private dispute." *Pennington*, 425 F. Supp. 3d at 232 (quoting *Fortini v. New Eng. Log Homes, Inc.*, 492 A.2d 545, 548 (Conn. App. Ct. 1985)). However, "[t]his public interest requirement for a private action under CUTPA was eliminated by an amendment to General Statutes § 42-110g(a) that became effective on June 8, 1984," and therefore should not have been applied in this case. *Fichera v. Mine Hill Corp.*, 541 A.2d 472, 473 n.2 (Conn. 1988).

[6] Apparently, no Connecticut appellate court has explicitly recognized a claim for aiding and abetting a CUTPA violation, though a number of Connecticut lower courts have done so. *See In re Trilegiant Corp.*, 11 F. Supp. 3d 132, 142-43 (D. Conn. 2014) (collecting cases). In his briefing before the district court and before this court, Pennington argues that we should apply the same standards to this claim as we do to his aiding and abetting fraud claims. Therefore, we proceed under that assumption.

\*     \*     \*

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court